IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger

Civil Action No. 16-CV-1103-MSK-GPG

KRISTIN BANTLE,

    Plaintiff,

*v*.

ROUTT COUNTY SHERIFF'S OFFICE, and
SHERIFF GARRETT WIGGINS, in his official and individual capacity,

    Defendants.

---

**OPINION AND ORDER ON MOTION FOR SUMMARY JUDGMENT**

---

**THIS MATTER** comes before the Court on the Defendants' Motion for Summary Judgment (## **49**, **50**), the Plaintiff's Response (## **57**, **59**), and the Defendants' Reply (# **61**); and the Plaintiff's Motion to Restrict Access to Certain Exhibits (# **60**).  For the following reasons, the Motion for Summary Judgment is granted and the Motion to Restrict is granted, in part.

### I.    JURISDICTION

The Court exercises jurisdiction under 28 U.S.C. § 1331.

### II.    BACKGROUND[1]

While employed by the Steamboat Springs Police Department (SSPD), Plaintiff Kristin Bantle applied to be a deputy sheriff in the Defendant Routt County Sheriff's Office.  Her application included a Personal History Statement, which was marked confidential in caps and

---

[1] The Court recounts the undisputed facts and the disputed facts in the light most favorable to Ms. Bantle, the nonmoving party.  *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

1

adorned with asterisks. Question 9-6 of the statement asked whether Ms. Bantle had ever used "marijuana or any controlled substance (including amphetamines, barbiturates, hallucinogenic, hashish, cocaine, opiates, etc.) without a doctor's prescription". Ex. C, # 49-3 at 19. Ms. Bantle stated that she had used cannabis a half dozen times in college. She had actually used cannabis and other drugs during college, in addition to cocaine and cannabis after college. Nevertheless, she certified at the conclusion of the statement that such information was true, complete, and correct to the best of her knowledge.

After Ms. Bantle submitted her application, the Sheriff's Office required that she participate in polygraph and psychological examinations. Before the polygraph exam, Ms. Bantle completed a Pre-Employment Questionnaire detailing her drug history, stating that she last used cannabis at Christmas, cocaine the previous summer, and ecstasy in college. The polygraph examiner discussed Ms. Bantle's drug use before performing the polygraph exam. In that discussion, she gave the examiner information about her entire drug history that she did not include on the Pre-Employment Questionnaire; specifically, it was revealed that Ms. Bantle had used LSD mushrooms in college. In connection with the psychological exam, Ms. Bantle completed a Life History Questionnaire in which she stated she had not used cannabis for more than 20 years and had never used any illegal drug other than cannabis. She certified at the conclusion of the questionnaire that this information was true, accurate, and complete.

Four days after the examinations, Undersheriff Ray Birch wrote to Ms. Bantle informing her that she failed the background-check portion of the application process. Undersheriff Birch informed Ms. Bantle that she failed because of her drug use and dishonesty on the Life History Questionnaire. Ms. Bantle inquired what would happen to the information about her drug history contained in her employment application. Undersheriff Birch told her it would go into a

2

confidential file reachable only by court order or subpoena. Defendant Sheriff Garrett Wiggins was concerned about Ms. Bantle's drug use and admissions and sought to inform the SSPD, but decided not to on the advice of counsel.

Two years later, while still employed by the SSPD, Ms. Bantle was working as the school resource officer for a local high school. Sheriff Wiggins became concerned about Ms. Bantle's presence at the school when his son, a middle school student, told him about her use of profane language. Sheriff Wiggins wrote an email to Chief Jerry DeLong and Captain Jerry Stabile of the SSPD, expressing these concerns. The email included this passage:

> As a side note; several years ago Officer Bantel [sic] applied with our agency and during the background phase something was discovered that was VERY disturbing to me and US Birch. This discovery immediately terminated her as an applicant and we pondered whether or not we should inform you of these circumstances. We did not know if this information would be considered as "Protected" or not so we checked with our legal counsel. Our attorney advised us that in order to avoid a potential law suit we should not inform you of this finding. To this day, we have said nothing but it has been mentally troubling for both Ray and I to keep this info from you. As much as I would like to inform you, I cannot and will not give you the details but having this knowledge gives me concern for her serving not only as a [law enforcement officer] but more so as a [school resource officer]. I tried to not allow this personal knowledge interfere with keeping an open mind about her service as a [law enforcement officer] but the recent reports of possible inappropriate behavior has [sic] given me new concern.

Ex. I, # 49-9 at 2. Based on the contents of the email, Captain Stabile responded that he had initiated an investigation into Ms. Bantle's behavior.

Chief DeLong met with Sheriff Wiggins to get more information about his concerns. Sheriff Wiggins was "very vague" in elaborating, but stated that "Steamboat is well-known for its powder." Ex. H, # 49-8 at 31:5–9. This, Chief DeLong understood to mean that Ms. Bantle had admitted to cocaine use. As a consequence, he initiated an outside criminal investigation into Ms. Bantle's possible unlawful activity.

3

Two weeks later, the Routt County District Attorney served a search warrant on the Sheriff's Office and obtained Ms. Bantle's employment application file. The officer heading the investigation found information suggesting that Ms. Bantle had violated SSPD policy by using cocaine and cannabis while employed as an officer. Based on this investigation, Chief DeLong recommended that Ms. Bantle's employment with the SSPD be terminated. The Steamboat Springs city manager adopted and implemented the recommendation, and Ms. Bantle's employment with the SSPD was terminated.

In this action, Ms. Bantle brings a claim against the Sheriff's Office and Sheriff Wiggins in his official capacity for deprivation of Fourth Amendment rights under 42 U.S.C. § 1983, and the following claims against the Sheriff's Office and Sheriff Wiggins in his official and individual capacity: (1) malicious prosecution, (2) intentional infliction of emotional distress, and (3) intentional interference with contractual obligations.[2]

### III. LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof, and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine"

---

[2] Sheriff Wiggins initially defended against the constitutional claim on the basis of qualified immunity in his individual capacity, but Ms. Bantle voluntarily dismissed with prejudice that individual claim (**# 56**).

and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(c)(1)(A). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus. Inc. v. Arvin Indus. Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material fact, no trial is required. The court then applies the law to the undisputed facts and enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, then the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

## IV. DISCUSSION

### A. Violation of Constitutional Rights

The Defendants move for summary judgment as to Ms. Bantle's § 1983 claim on the grounds that they did not violate her constitutional rights. Specifically, they argue that, while

there is a constitutional right to privacy [3] in preventing disclosure of certain personal information, the Tenth Circuit has made it clear that a plaintiff has no privacy interest in information about illegal drug use.

The first step in addressing a § 1983 claim is to determine the constitutional right that is allegedly infringed. Here, Ms. Bantle contends that her constitutional right to privacy was abridged. The right to privacy in personal information possessed by the state arises under the 14th Amendment of the U.S. Constitution. Personal information is constitutionally protected where someone has a legitimate expectation that it will remain private while in the state's possession. *Whalen v. Roe*, 429 U.S. 589, 599–600 (1977); *Mangels v. Pena*, 789 F.2d 836, 839 (10th Cir. 1986). To determine whether this right has been abridged, requires consideration of whether the information is so intimate or otherwise personal in nature so as to make a plaintiff's expectation of privacy legitimate. *Sheets v. Salt Lake Cty.*, 45 F.3d 1383, 1387 (10th Cir. 1995). If so, the disclosure of such information must advance a compelling state interest in the least intrusive manner.

Not all personal information is protected. Generally, information pertaining to criminal activity is not protected by the right to privacy. *Aid for Women v. Foulston*, 441 F.3d 1101, 1117 (10th Cir. 2006). As a consequence, information about criminal convictions is not protected. *Nilson v. Layton City*, 45 F.3d 269, 372 (10th Cir. 1995). Similarly, information other than convictions that pertains to criminal activity may fall outside of constitutional protection. For example, the Tenth Circuit has expressly held that information about illegal drug use is not

---

[3] Ms. Bantle's Complaint appears to base her constitutional claim entirely on a violation of her Fourth Amendment right to be free from unreasonable searches. However, it is clear from the parties' briefing at summary judgment that they see the dispute to be over a violation of her right to privacy under the Fourteenth Amendment. The Court will therefore treat the parties' briefing as an agreed motion to amend the Complaint to allege a claim for violation of privacy rights.

constitutionally protected. *Mangels*, 789 F.2d at 839. This is because valid drug laws put citizens on notice that the realm of drug use or activity is not private. *Id*. Even false information or information about accusations is unprotected. In *Stidham v. Peace Officer Standards & Training*, 265 F.3d 1144, 1155 (10th Cir. 2001), the Tenth Circuit concluded that an allegedly false allegation that the plaintiff had raped a young woman was unprotected.

The application of this precedent to Ms. Bantle's claim is obvious. The only information she alleges was improperly disclosed was her prior drug use and related dishonest statements about it. Such information falls within the parameters of being related to illegal-drug criminal activity, for which Ms. Bantle had no legitimate expectation of privacy. Understandably, Ms. Bantle argues that she was given assurances that her employment application would remain private. But such assurances do not create a constitutional privacy right, and the failure of governmental officials to keep such promises do not create a cognizable claim for violation of the constitutional right to privacy. *See Mangels*, 789 F. 2d at 839–40.

Because Ms. Bantle had no constitutional right of privacy in information in her employment application file pertaining to her drug use, she has no claim under 42 U.S.C.§ 1983 against the Defendants for its release to the SSPD. Accordingly, summary judgment on this claim is appropriately entered in favor of the Defendants.

**B. Remaining State-Law Claims**

Malicious prosecution, intentional infliction of emotional distress, and intentional interference with contractual obligations are state-law causes of action. Here, they arise under Colorado law. Having dismissed the federal claim over which it has original jurisdiction, the Court declines to exercise supplemental jurisdiction over these claims pursuant to 28 U.S.C. §1367(c)(3).

## C. Motion to Restrict Access

Ms. Bantle seeks to restrict access to various exhibits accompanying the Defendants' Motion for Summary Judgment and one exhibit accompanying her response. Ms. Bantle asserts that a number of exhibits contain her confidential, personally identifying information that she submitted with her employment application, including financial and family information.

The Supreme Court acknowledged a common law right of access to judicial records in *Nixon v. Warner Commc'ns Inc.*, 435 U.S. 589, 597 (1978). This right is premised upon the recognition that public monitoring of the courts fosters important values such as respect for the legal system. *See In re Providence Journal Co.*, 293 F.3d 1, 9 (1st Cir. 2002). Judges have a responsibility to avoid secrecy in court proceedings because "secret court proceedings are anathema to a free society." *M.M. v. Zavaras*, 939 F. Supp. 799, 801 (D. Colo. 1996). There is a presumption that documents essential to the judicial process are to be available to the public, but they may be sealed when the public's right of access is outweighed by interests which favor nondisclosure. *See United States v. McVeigh*, 119 F.3d 806, 811 (10th Cir. 1997).

Local Rule 7.2(b) requires a party seeking restricted access to demonstrate, among other things, "the [private] interest to be protected" by the restriction and "a clearly defined and serious injury that would result if access is not restricted." Furthermore, that rule provides that "stipulations between the parties or stipulated protective orders with regard to discovery" are, of themselves, insufficient to warrant restricted access.

For the most part, the exhibits Ms. Bantle seeks to restrict are superfluous. The only portion of the myriad employment questionnaires relevant to this case (Exs. C, D, F) are her statements about her drug history and certifications that the information she provided was accurate. The vast majority of these exhibits contain irrelevant, personally identifying

information that should not have been a part of the record in the first place. Similarly, the entirety of the search warrant (Ex. L) and termination letter (Ex. M) is offered for the pedestrian facts that a search warrant was executed and Ms. Bantle was terminated by the SSPD. Because the public has no interest in irrelevant and superfluous information and because the relevant information in these exhibits was already reproduced in the parties' briefs, Exhibits C, D, F, L, and M may remain under restriction.

As to Exhibit N, the charging instrument related to the investigation into Ms. Bantle's conduct, the Court again notes that it was unnecessary to include the entire instrument to merely establish the fact that Ms. Bantle was charged. But the Court presumes that this instrument is a public record readily available in Routt County court records, so Ms. Bantle's private interest cannot overcome the public's interest in publication of an already public record.

Finally, Ms. Bantle seeks to restrict her deposition transcript (Ex. A), generally contending that it contains the specific details of her background investigation, personal history statement, polygraph examination, psychological examination, and rejection from employment. The Court disagrees. Where the questionnaires related to these events contain a plethora of personal information as noted, the deposition transcript largely discusses the events germane to Ms. Bantle's claims, much of which is appropriately reproduced in the parties' briefs. Absent specific citation to excerpts of the transcript that contain personally identifying information or other information the public has no interest in, the Court declines to restrict Exhibit A.

Accordingly, the motion is **GRANTED IN PART**. The Clerk shall restrict access to ## **49-3**, **49-4**, **49-6**, **49-12**, and **49-13** at Level 1. The Clerk shall unrestrict access to all other exhibits related to ## **49** and **57**, including # **49** and # **57** themselves.

9

## V. CONCLUSION

For the foregoing reasons, the Defendants' Motion for Summary Judgment (**## 49**, **50**) is **GRANTED** as to the Plaintiff's § 1983 claim.   This claim is **DISMISSED WITH PREJUDICE**.[4]   The Plaintiff's state-law claims are **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction under 28 U.S.C. § 1367.

Dated this 16th day of February, 2018.

BY THE COURT:

Marcia S. Krieger
Chief United States District Judge

---

[4] Because the claim cannot be pursued as a matter of law and there has been no proffer of allegations that can address the deficiencies in the showing, the Court is disinclined to allow further amendment of the Complaint